IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MICHAEL GORE,

No. 4:24-CV-644-LPR

Plaintiff,

v.

Wednesday, March 4, 2026,
Little Rock, Arkansas

ICON EQUITIES LLC, et al.,      8:58 a.m.

Defendants.

**TRANSCRIPT OF TELECONFERENCE**
BEFORE THE HONORABLE LEE P. RUDOFSKY,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

On Behalf of the Plaintiff:

MR. LUTHER ONEAL SUTTER,
    Sutter & Gillham, PLLC
    310 Natural Resources Drive, Suite 2
    Little Rock, Arkansas 72205

On Behalf of the Defendant:

MR. ALEXANDER P. MICKEL,
    Kutak Rock, LLP
    5111 West JB Hunt, Suite 300
    Rogers, Arkansas 72758

*Proceedings reported by machine stenography.  Transcript prepared utilizing computer-aided transcription.*

Graham Higdon, RMR, CRR, United States Court Reporter
graham_higdon@ared.uscourts.gov (501)604-5115

P R O C E E D I N G S

THE COURT:  Thank you all for joining.  This is Gore against Icon Equities LLC, et al., 4:24-CV-00644.  I believe I heard that we have Mr. Sutter on the line for the plaintiffs and then let me make sure I know who we have on the line for Union Pacific.  I believe it's Mickel.  Is it Mr. Mickel?  Is that correct?

MR. MICKEL:  Yes, your Honor.  Alex Mickel here this morning.

THE COURT:  And, Mr. Sutter, you're here, too?

MR. SUTTER:  Yes.  Yes, sir.

THE COURT:  Okay.  Great.  I think it's down to just you two gentlemen, right?  I don't think there are any other parties at this point that we have to wait for -- that we're waiting for; is that correct?

MR. SUTTER:  Yes, sir.

MR. MICKEL:  Yes, sir.

THE COURT:  Okay.  I got it.  That's a "yes" from both of you.  Okay.  Good.

So here's the deal.  Obviously, as you all know, we have sort of 1980s technology at the court in terms of our teleconference abilities.  And so what that requires is that we all speak very loudly, very clearly, try not to speak over one another.  And also if I don't call on you by name, if you would just introduce yourselves for the record every time you speak,

that would be helpful because our court reporter will -- it'll make it easier on him to get a good record that way.

If we are not following any of these rules or if for any other reason the court reporter can't get a good record, I'm going to ask the court reporter to jump in right away and let us know that he's having a problem as opposed to sort of waiting and then we have to reconstruct what we all just said.  So if he does that, please understand he's doing it at my direction.

Okay.  So obviously we have most immediately pending the motion to remand, which is part of Document 56.  I've called you all here because I feel like I am ready to rule and I feel like I can give you a ruling over the phone to sort of push things forward so you all don't have to wait for me to have a pristine written order.

Having said that, we can do this one of two ways.  I feel like I have enough to sort of just rule, and I'm happy to do that.  On the other hand, I am also happy to listen to you all argue if you feel like there are points you'd like to make that are worth your -- your oral argument time, you know, your client's money, and my oral argument time.  So we can really do it, whatever you'd like.  If any party wants to argue, then I'll let you all argue.  If nobody wants to argue, then I will just decide the case on the briefs and I'll tell you what my decision is.

But I guess, Mr. Sutter, what is your desire?

MR. SUTTER:  Judge, I don't really have any argument. What I'm interested in is -- is -- is, in particular, is given that the -- the original complaint made a -- essentially made a demand with all of the defendants, and given the law and diversity, that you can't aggregate damages against defendants to create diversity -- diversity jurisdiction.  That's the question I'm hoping you answer today.  So thank you for your time.

THE COURT:  Okay.  I appreciate that.  So I will put Mr. Sutter down on the side of no oral argument.

Mr. Mickel, what do you want?

MR. MICKEL:  Your Honor, I don't believe I need additional oral argument on this, but I would say that it's Union Pacific's position -- and this is laid out in the sur-reply -- that there's still diversity jurisdiction even if you don't aggregate the claims.  But I don't believe I need additional oral argument on that.

THE COURT:  Okay.  And I should just say I understand both of your different positions from the briefing on -- you know, both of the different positions you've just discussed from your briefing as well as, of course, you've made in your briefing other arguments as well.  I'm going to put Mr. Mickel also down for not needing or wanting oral argument.  So since nobody needs or wants oral argument, I am just going to rule.

This is going to be a little lengthy, in part.  I apologize

for that, but I am trying to get decisions out the door sooner rather than later these days and I have found that doing it orally helps me -- helps me do that, at least to some extent, rather than have you wait until I, you know, dot every I and cross every T and all of that stuff.

So with that, if y'all will just pay attention, I know you will, and then after I'm -- after I'm done, I will obviously ask you all if you have any requests for clarifications or things of that nature.

Okay.  This order addresses plaintiff's motion for remand. And that motion was -- as I explained earlier, part of Document 56.

As I'm about to explain, the motion is denied because the Court has diversity jurisdiction over the remaining state-law claims.

This case was originally filed in state court by Plaintiff Michael Gore against multiple defendants.  The complaint asserted federal claims against Icon Equities LLC, Albert De Renzo, and Lloyd and McDaniel, PLC.  The complaint asserted state-law claims against Union Pacific Railroad.

And I guess I should say parenthetically here, the complaint also named Union Pacific Corporation as a defendant, but Union Pacific Corporation has since been voluntarily dismissed and is not relevant for the purposes of this order. If you want to know more about that, see Document 17.

Okay.  The case was removed to federal court on July 29, 2024.

More than a year later, in August of 2025, plaintiff moved to, one, dismiss his federal claims with prejudice and, two, remand state-law claims.  The Court granted the request to dismiss the federal claims with prejudice, and that happened at Doc 60.  As to the remand request, the Court asked for additional briefing.  Now that the additional briefing is complete and the Court has reviewed that briefing, the Court is ready to decide the remand issue as I've just explained to you a couple of moments ago.

When a federal court has dismissed all federal claims in a removed case, that court usually has discretion to remand any remaining state-law claims.  And that comes from cases like *Royal Canin v. Wullschleger*, 604 U.S. 22, 31 to 32 (2025), also, for example, *Carlsbad Technology, Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 639 (2009).  I could go on with more Supreme Court cases and Eighth Circuit cases, but I don't feel the need to.

In any event, the idea that a court in that situation has the discretion to remand the remaining state-law claims is true only where the sole basis for the Court's jurisdiction over the remaining state-law claims is supplemental jurisdiction.  Where a court has diversity jurisdiction over the remaining state-law claims, the Court must exercise that jurisdiction and keep the state-law claims.  And in the present case, the Court is

persuaded that it does have diversity jurisdiction over state-law claims, and so must exercise it.  Here's why.

At the time the plaintiff's complaint was filed, the parties were diverse.  At the time of removal, the parties were diverse.  And the parties remain diverse today.  As I understand it -- I guess I should say as the Court understands it, no one questions any of that.  Neither party questions any of that. So, we move on to the amount in controversy requirement.  And, given that plaintiff is contesting the amount in controversy requirement, it falls to Union Pacific to -- sorry -- Union Pacific Railroad Company to prove the amount in controversy by a preponderance of the evidence.  And that comes from cases like *James Neff Kramper Farm Partnership v. IBP, Inc.*, 393 F.3d 828, 831 (Eighth Circuit 2005).  It also comes from cases like *Trimble v. Asarco, Inc.*, 232 F.3d 946, 959, (Eighth Cir. 2000). I think that's sufficient for you to understand where I've gotten that principle from.

In any event, the amount in controversy is the potential value of a claim to plaintiff, that is, the highest amount a plaintiff asserts he can recover on his claim.

The state-law claims have always sought, and still today seek, both compensatory and punitive damages against Union Pacific Railroad Company for conversion and breach of contract. And the support for that is, if you look at the Notice of Removal at Doc 1 at page 11 and you compare that to the

complaint, Doc 2 at page 6.  At the time plaintiff filed this action, in May of 2024, approximately $14,800 in wages had been allegedly converted and/or withheld in breach of contract. Again, allegedly.  And where you get that is from Defendant's Statement of Undisputed Material Fact, Doc 40 at two to three, particularly the table there, and Plaintiff's Response to the Defendant's Statements of Undisputed Material Facts, Doc 45 at three.

So at the time -- at that time, I should say, meaning in May of 2024, compensatory damages could have reached approximately $14,800.  Considering this level of potential compensatory damages, punitive damages could have easily reached $74,000, which is about five times the potential compensatory damages.  A five to one punitive damage award is not unheard of, especially where the compensatory award is relatively small. And that comes from cases like *BMW of North America v. Gore*, 517 U.S. 559, 568 (1996), and I'll just quote it for a second.

"Only when an award can be fairly categorized as 'grossly excessive' in relation to" -- and this is putting my own words in a little bit -- the State's legitimate interests in punishment and deterrence -- if it was a written opinion, you'd see that in brackets -- "does it enter the zone of arbitrariness that violates the due process clause of the Fourteenth Amendment."

Okay.  So, putting the potential compensatory award and the

potential punitive award together gets each state-law claim over the 75,000 amount in controversy threshold, at least at the time the complaint was filed.  And that's not even thinking about attorney's fees yet.

However, there is a wrinkle here.  At some unknown point in July of 2024, the $14,800 was returned to the plaintiffs.  And just so you know, that's coming from Plaintiff's Response to Defendant's Statement of Undisputed Material Fact, Doc 45 at three.  And the quote there is, "Statement 20:  Plaintiff's withheld wages were returned to him" -- and, you know, dot, dot, dot, dot.  There's ellipses there.  The response to that was, "Admitted, several weeks later."  And so the best I can do on this record is say that sometime in July of 2024 the $14,800 was returned to the plaintiff.  The record does not reveal the exact date in July of 2024 that the moneys were returned.  And the record's silence on this point is unfortunate because the exact date might matter a great deal.  Remember that this case was removed to federal court on July 29, 2024.  And obviously that comes from the Notice of Removal.

The Eighth Circuit has clearly stated that, in removal cases, the amount in controversy is judged at the time of the removal.  And that comes from cases like *Noonan v. American Family Mutual Insurance Co.*, 924 F.3d 1026 at 1028 (Eighth Circuit 2019).  It also comes from cases like *Schubert v. Auto Owners Insurance Co.*, 649 F.3d 817 at 822 (Eighth Circuit 2011).

I guess I should also note here that the Court agrees with Union Pacific that post-removal happenings cannot affect whether the amount in controversy requirement has been met.  And that comes from *St. Paul Mercury Indemnity Co. against Red Cab Co.*, 303 U.S. 283, 292.

If removal occurred before the $14,800 was returned to the plaintiff, then the analysis that I set forth a couple of moments ago would hold and Union Pacific Railroad has proved by a preponderance of the evidence that the amount in controversy exceeded $75,000.  Also, in that scenario, plaintiff would be unable to establish to a legal certainty that the claim is for less than the amount in controversy -- than the amount in controversy threshold that's required.  If, however, instead, the $14,800 was returned to plaintiff before the case was removed, then a different analysis is called for.

And so let's think about this latter scenario for a second.

In that latter scenario, it's crystal clear that the plaintiff will receive less than $14,800 for compensatory damages.  Indeed, in that scenario, he may only receive and is likely only to receive a $1 nominal damages award, even assuming if he gets through trial and wins a trial.  This very, very low compensatory or nominal damage award of a dollar raises a much more difficult issue, because of the constitutional restraints on punitive damages.

And, again, when I talk about the constitutional restraints

on punitive damages, I'm talking about the *State Farm* case and the *Gore* case.  In terms of *State Farm*, that's 538 U.S. 408. And in terms of *Gore*, we're talking about 517 U.S. -- and the pinpoint cite I guess there would be 582.

But let me explain that even in this scenario, the value of the claim to plaintiff could exceed $75,000.  And that's because a punitive damage award could constitutionally exceed a single-digit ratio where the compensatory damage award is small and the misconduct is particularly egregious.

The *State Farm* quote that I'd like to give you all here is the following -- and, again, if I was to write this, there would be a number of ellipses that you'll see in this quote, but understanding that there are ellipses in here, the quote that I've honed in on is the following:

"We decline . . . to impose a bright-line ratio which a punitive damages award cannot exceed.  Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process . . . Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages."

I'll also provide a quote from *Gore* on this point.  "Low

awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in a small amount of economic damages.  A higher ratio may also be justified in cases where the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine."

Okay.  So moving on from the case quotes then.

Ultimately, it is not out of the question here that a punitive damage award in this case could constitutionally exceed $75,000.  Moreover, even if the compensatory damages were only $1 and the punitive damages were something less than $75,000, say, for example, $50,000, attorney's fees could easily put the amount in controversy over $75,000.

In light of all of this, the Court is going to adjudicate state-law claims.  This is for two independent reasons.  And now I'm basically summing up.

First, it is most likely that diversity jurisdiction exists, because it would exist in either of the two scenarios I described above, and requires the Court to adjudicate state-law claims.  That is, the preponderance of evidence suggests to the Court that the amount in controversy exceeds $75,000 and plaintiff cannot establish to a legal certainty that the claim is worth less than this amount.

Second, even if the Court's diversity jurisdiction analysis turns out to be wrong, the existence of diversity jurisdiction

over the state-law claims in this case is a close enough call --
again, even if the Court ends up being wrong about that call --
it's a close enough call that the Court, as a matter of
discretion, will continue to exercise its supplemental
jurisdiction over state-law claims.

And here's what I want to emphasize about that.  I do want
to emphasize that the Court agrees with and accepts and
acknowledges and adopts Union Pacific Railroad Company's
argument that *Royal Canin* does not apply here because plaintiff
has not amended his complaint.  Union Pacific is right that a
court order dismissing with prejudice all the federal claims in
a case, even if it's done at behest of the plaintiff, is not the
same thing as a plaintiff omitting all federal claims in an
amended complaint and thereby making it as if the omitted
federal claims had never been pled in the first place.

And there I will point everybody to the Defendant's
Sur-Reply, Document 62 at pages two to three.

Given this, exercising supplemental jurisdiction in these
circumstances is the most efficient way to get this case to the
merits and avoid additional jurisdictional wrangling.

And I have a, perhaps, analogous cite there.  Maybe it's
not a see cite, but it's kind of analogous for this proposition,
which is *Royal Canin,* 604 U.S. at 38, note eight.  And
essentially there it notes that constant litigation over the
matter of the amount in controversy has the potential to --

having -- let me -- let me try that again.

What I'm citing notes that constant litigation over the matter of the amount in controversy, having the potential to alter a court's jurisdiction, would be wasteful.

And, again, that is not a direct quote.  That puts some of my words into the quote, but it is essentially that's what the proposition is in *Royal Canin*.  And I think it, at least by analogy, applies here.

So, again, just so sort of very ultimately sum up, there's diversity jurisdiction here.  But even if that's not right, the diversity jurisdiction call is close enough that it makes sense to exercise supplemental jurisdiction over these state-law claims.

So where that -- where that leaves us then is a denial of the remand order and then a sort of question for you all I will have administratively with respect to the pending motion for summary judgment.  But before I get to my question with respect to the pending motion for summary judgment, I am happy to discuss requests for clarification.  This obviously is not a time to argue against the decision.  I've made my decision.  You know, you may agree with it or you may not, but I'm happy if you need clarification.

Why don't we start with Mr. Sutter.

MR. SUTTER:  Judge, yes.  I'd like -- and I'm not arguing with you.  I appreciate your hard work.  I disagree and

object to the decision for purposes of the record.  But just a couple of questions because I may have misunderstood.  I'm not a good listener because of some disabilities I have and I apologize.  It's hard for me to take -- just so the Court knows in the future, oral decisions, I have difficulty processing it sometimes and I apologize for that.

THE COURT:  Don't -- don't -- Mr. Sutter, let me interrupt you for a second.  Don't apologize for that.  I did not know that.  I appreciate you telling me that.  And obviously, while I'm happy to also -- I'm happy to give you clarification today, you should know that a transcript of this decision will be prepared and will be put on the website so eventually you'll be able to read it.

MR. SUTTER:  Yes, sir, I know that.  I just didn't want you to -- I live in interesting times these days, Judge.  I've been accused of all kinds of unethical conduct.  So I have to be careful how I interact with courts.

THE COURT:  I got it.

MR. SUTTER:  And so -- so I needed to make that record so that you would not make any enforcement finding against me.  And I have no basis to believe that you would, but I'm operating in an environment, Judge, right now where I have to be somewhat paranoid.

THE COURT:  I got it.  Okay.  So that's fine.  I totally understand.  What do you want to know in terms of

clarification?

MR. SUTTER:  Okay.  All right.  So, Judge, it appears -- it appeared, as I was listening, that perhaps you shifted the burden to me to prove the existence of jurisdiction when you said that the record was unclear.  Judge, the burden was on Union Pacific to provide that information to you.  And, quite frankly, I dropped that argument and I did not raise it.  And I'm embarrassed by that.  But, as you know, your subject matter jurisdiction can be questioned anytime.

And so it's my recollection, just for the record, that the money was returned to the plaintiff before this matter was removed.  And I just wanted to say that for the record.  I understand your alternative basis, which is supplemental jurisdiction.  Let me just say for the record, therefore, if you did that, Judge -- and I'm sure you didn't, I probably misunderstood --

THE COURT:  Let me -- so let me stop you there just for a second and then I'll let you bring up your other ones.

So I don't believe that's what I -- that's what I said or did.  I will -- I'll obviously go back and look.  But I will say this to make it -- to make it very, very clear -- and this is what I believe I said originally.  But I agree with you in this sense, Mr. Sutter.

So it is Union Pacific's burden to prove the amount in controversy by a preponderance of the evidence.  If Union

Pacific proves the amount in controversy by a preponderance of the evidence, you then could, but -- if you wanted to, you then could try to prove that to a legal certainty that is not the value of your claim.  But that's only after they have proved it by a preponderance of the evidence.  So they do need to prove it by a preponderance of the evidence.

As to the record being -- as to the record being unclear in terms of when exactly the funds were returned and whether it was before or after removal, you're correct that I said the record was unclear, but what I decided was, either way, they have still proved to me by -- meaning Union Pacific has still proved to me by a preponderance of the evidence that there is diversity jurisdiction.  And the second part of that ruling was even if the funds had been returned -- even if the funds had been returned before removal, because of the potential for a $1 nominal damages award, a larger than ten to one, it could be significantly larger punitive damage award, and I explained that, I'm not going to go through it again, why it could be -- why it could be so large, plus attorney's fees, that still gets Union Pacific there by a preponderance of the evidence to over $75,000.

But, anyway, on that point, I just wanted to make the record clear.  I think you are right legally in terms of the standards and the burdens of proof, but I still -- and I know obviously you disagree with this, but I still don't think, under

those standards and burdens, you prevail.

MR. SUTTER:  Yes, sir.  I appreciate that.  And I do appreciate the opportunity to make a record because I do -- I do understand it more clearly.  Thank you for your clarification. I would just say that I'm sure that any -- that you resolved any doubts against jurisdiction as you're required to do, but, yet, I understand your ruling now.

So the second thing I would say, Judge, is I would respectfully request a ruling on the factors addressing your discretion to exercise supplemental jurisdiction.

One of the biggest concerns I have, Judge, because I -- I actually made this law where you can convert money in the Arkansas Supreme Court two or three decades ago.  It's a case called *Grayson versus Bank of Little Rock*.  And I took the position back then that you appear to be taking, that money couldn't be -- I won't say that.  I'll withdraw that statement. I don't know what position you're going to take.  But I'm drawing that from the idea that I get a $1 nominal damage award. You know, one of the factors --

THE COURT:  Well, and I should -- I guess I should say -- and that's a good point, Mr. Sutter.  I'm not suggesting -- and if I suggested it, I should not have suggested it.  I'm not suggesting that if the money is returned, you're for sure only going to get a $1 nominal damage award.  I was posing that as the best instance for you with respect to remand

because that's what would make the -- that's what -- that's what would make the amount in controversy the absolute lowest it could be for you.  So that was a -- you know, that's an assumption that I was trying to sort of, you know, take on your behalf for purposes of this motion to amend.  I was not trying to --

MR. SUTTER:  I understand that.

THE COURT:  -- suggest how the law is going to shake out.

MR. SUTTER:  Right.  I understand.  And thank you for that because that's sort of what I was thinking here.  Because I'll just tell you, this is -- I think it's an unsettled issue of state law.  And, you know, I don't want to litigate every case like it needs to be up to the Supreme Court like I have before, but I just wanted to bring that issue to your attention, that this is an unsettled question of state law in my mind.  And I didn't hear you address the factors addressing supplemental jurisdiction.  I'm sure you considered them all, but I just wanted, for the record, to make my record that to the extent you're exercising supplemental jurisdiction, I really believe consideration should be given to the fact that we're really in uncharted areas here where we -- when we're talking about the measure of damages that are allowable in conversion where you have money converted and money is returned.  Because this was one of the precise issues that I recall -- I could be wrong --

that I recall arguing to the Arkansas Supreme Court in this *Bank of Little Rock versus Grayson* case.

THE COURT:  I appreciate that, Mr. Sutter.  Let me tell you this.  You are correct that I considered -- and I guess what I will say is I considered every factor, because in terms of exercising my discretion with respect to keeping a -- you know, keeping supplemental jurisdiction, I -- and you should tell me if you think otherwise -- I think that this is a totality of the circumstances test and I'm supposed to take into account everything that I think could bear on that question.

I will tell you -- I accept your argument or your contention -- certainly for purposes of this motion I accept your contention that this is an area of unsettled law and a novel question -- again, if not novel, at least unsettled.  I accept that fully and I -- that was -- that sort of was factored in.

What I will tell you is -- and I want to be straight with both parties a hundred percent.  In this situation, the strongest factor -- and I felt really that this outweighed every other factor -- I know I have discretion to not have it outweigh it, but I really do feel like it outweighs it -- which is the closeness of the diversity of jurisdiction question, and that is really -- that is what is pushing me, regardless of any factors that push me the other way, which your novelty question does push me the other way.  But I think it is overwhelmed by the

closeness of the diversity question and my desire to avoid a wrong decision on that.  Because obviously, you and I both know, if I have diversity jurisdiction, I'm required to exercise it.  And so I really don't want to make a mistake of saying I don't have diversity jurisdiction when I do.

Now, it's true that I should resolve all questions in favor -- in favor of remand.  That's true, and those principles push up against each other.  But in this particular situation I think the closeness of the diversity question is very, very important in the supplemental jurisdiction analysis.  And for me, given the factors here, it really outweighs everything else.

MR. SUTTER:  And I do appreciate your clarification, Judge.  And I do appreciate the time you've taken, although, I respectfully disagree with the Court's ruling.  I just want to make my record clear, because in the event I get an adverse --

THE COURT:  Yup.

MR. SUTTER:  In the event I get an adverse jury verdict or an adverse ruling from you, I don't want to be accused of forum shopping or making any objection --

THE COURT:  You are -- you are doing your job.  Everything you are doing makes perfect sense to me.

MR. SUTTER:  And I do want -- thank you, Judge.  And I appreciate that.  I just want to make it clear that win, lose, or draw, I intend to pursue the jurisdictional issue on further up the Eighth Circuit regardless of -- if I win I'm not, but if

I lose -- if I lose -- because a unanimous jury, Judge, is a hard -- is a hard bar to overcome, particularly in this environment.  So I really appreciate your time this morning.  It's always a pleasure talking to you.

THE COURT:  Any further clarification requests you need?

MR. SUTTER:  No, sir.  I was about to say that you've answered all my questions.

THE COURT:  Okay.  Mr. Mickel, your turn if you have anything.

MR. MICKEL:  Your Honor, I don't have any questions.  Thank you.

THE COURT:  Okay.  So now I do have some questions for you all then, which is -- and, Mr. Sutter, this question maybe you just answered.  I had this question going in, but maybe I no longer have it.  I take it you still want to pursue this claim to the merits; is that correct?

MR. SUTTER:  Absolutely.  What's my alternative?

THE COURT:  No, no, no, no.  Yeah.  I just -- the reason I ask is I know there was, you know, there was a whiff of some settlement with other organizations and I have no idea how much -- or other entities -- how much you did or didn't get from them.  So it's not without the realm of possibility that you could just say, you know what, I'm done.  I just wanted to make sure, but I understand you still want to pursue it.

MR. SUTTER:  Judge, yeah.  Quitting's not in me.

THE COURT:  I got it.  I have no problem with that. That's great.  Okay.  So in that case, then what I have sort of, you know, up next is the motion for summary judgment that Mr. Mickel filed that has been stayed up until this point.

Mr. Mickel, let me ask you and then I will ask Mr. Sutter. Given the amount of time that has sort of, you know, come between the filing of this and -- the filing of your motion and now, is there anything that you need to update or do you need supplemental briefing?  And, again, I'm going to ask the same thing to Mr. Sutter.  Is there anything that changes -- that sort of would be beneficial for you to all either go back and do the briefing again or to file a supplemental brief on?

MR. MICKEL:  No, your Honor.  I don't believe Union Pacific needs to supplement the briefing any further.  This is primarily interpretations of statutes that provide protections to Union Pacific.  So I don't believe anything else is needed. I don't believe we need to supplement anymore facts for the record or anything like that.

THE COURT:  Okay.  Mr. Sutter, what about for you?

MR. SUTTER:  Well, Judge, it's up to you really because you made the rather unusual ruling that my -- that my verified statement of facts was not -- was not sufficient to support a motion for summary judgment, my early motion.  And so I can either re-file that with an affidavit or I can make a

motion at trial, whichever -- but I will be making a motion for judgment as a matter of law at trial.  It's just however you would like to address the issue on -- because the arguments of Union Pacific revolve around -- he's correct -- revolve around a statute and whether or not Union Pacific needed a court order to foreclose the lien before sending the money on to the alleged judgment creditors.  And so it's just a matter of how you want that issue crystallized in terms of judicial economy.  If you want to address it at trial, we can do that, or I can re-file that motion in the form in which you want it filed and we can handle it like that.  I just --

THE COURT:  I see --

MR. SUTTER:  -- wanted to let you know what I'm going to do.

THE COURT:  No, I see what you're talking about, Mr. Sutter.  So I'm really not talking about your motion because I've already ruled on that.  I'm talking about -- I'm talking about Mr. -- the defendants, Union Pacific's motion, which I think is Doc 38, because that's the one I haven't ruled on.  And so I really -- what I was asking you is, do you need -- do you need a sur-response or another response or some supplement -- some supplemental response?  And the only reason I'm asking is because how long I've had it for.

MR. SUTTER:  Right.  No.  The answer to your question is no, Judge.  But I guess my motion is to -- is to allow me to

file a motion for summary judgment myself out of time.

THE COURT:  Well, if you have that motion, you can put it in writing and I'm happy to look at it.  You know, I don't know what I'm going to decide on it, but if that's what you want to do, you can do that as long as you write up the motion.  And, who knows, maybe Union Pacific -- maybe Union Pacific will be generous and think that that is the right way to sort of do this most efficiently.  I have no idea.  I don't want to know right now.  I'm not asking.  But I don't want to take an oral motion.

MR. SUTTER:  Yes, sir.

THE COURT:  So, okay.  Then here's what I would like, though.  I would like to schedule an oral argument on this.  I do agree with Mr. Sutter that this is a -- again, I'm not sure if "novel" is exactly the right word, but this is a, perhaps, unsettled question.  The reason I say "perhaps" is I'm not sure it's unsettled, and that'll be part of our argument, but I accept Mr. Sutter's -- I accept Mr. Sutter's good, reasonable argument that there is at least an unsettled portion of this.  Whether I end up ultimately agreeing with it or not, I think it's reasonable enough to really delve into.

And so I'm going to have Heather reach out to you, or, quite frankly, if Heather wants to do it now, you can do it now.  But I'd like to set oral argument for sometime in April or May.  And then once we have that oral argument, just resolve this.  And if, you know, if it's either resolved to throw it out, fine,

if it's resolved to move on, then move on with speed.

THE COURTROOM DEPUTY:  I'll send an e-mail.

THE COURT:  Heather says she's going to send an e-mail to you all and then we will have oral argument on it at an appropriate time.

Does anybody have anything else for the Court?

Mr. Sutter?

MR. SUTTER:  No, sir.  Thank you for your time.

THE COURT:  Mr. Mickel?

MR. MICKEL:  No, your Honor.  Thank you.

THE COURT:  Okay.  Very well.  See you all later.

Adjourned.

(Proceedings concluded at 9:38 a.m.)

REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/Graham Higdon, RMR, CRR        Date:  March 4, 2026
United States Court Reporter